Filed 4/14/25  P. v. McMichael CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B337544 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA111066) |
| v. | |
| CHARON MICHAEL MCMICHAEL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Reversed and remanded with instructions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

Charon Michael McMichael was charged with two counts of murder for the 2007 shooting deaths of two patrons at a motorcycle club. At the preliminary hearing in his case, two witnesses implicated McMichael in the shooting but both witnesses mentioned another person, "Big Kill," who handed McMichael the murder weapon and disposed of it afterwards. One of these witnesses also testified McMichael told him someone called "Jigger" shot one of the victims. Based on this evidence, McMichael pleaded no contest to two counts of voluntary manslaughter in 2010.

In 2023, McMichael petitioned for resentencing under Penal Code section 1172.6.[1] McMichael attached an affidavit asserting he was not the sole shooter and disputing the preliminary hearing evidence. The trial court denied McMichael's petition without issuing an order to show cause, reasoning the preliminary hearing evidence established McMichael was the actual shooter. McMichael appeals, arguing the trial court engaged in impermissible factfinding. We reverse and remand for an evidentiary hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Conviction and Sentence*

In 2010, McMichael was charged with two counts of murder (§ 187, subd. (a)) for the shooting deaths of Mario Jackson ("Snag") and Tierney Yates ("Slim"). The indictment alleged, as to both counts, that McMichael committed the murders for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and

---

[1]    Undesignated statutory references are to the Penal Code.

that McMichael personally discharged a firearm, causing great bodily injury and death (§ 12022.53, subds. (b)-(d)).

On July 7, 2010, pursuant to a negotiated plea, the trial court dismissed the murder counts and McMichael pleaded no contest to two counts of voluntary manslaughter (§ 192, subd. (a)). McMichael further admitted to gang enhancements (§ 186.22, subds. (b)(1)(C), (b)(1)(A)) and enhancements for personal use of a firearm in the commission of a felony (§ 12022.5, subd. (a)). The court imposed a total prison sentence of 30 years four months.

B.      *Section 1172.6 Resentencing Petition*

In January 2023, McMichael in propria persona filed a form petition for resentencing under former section 1170.95, now section 1172.6. McMichael's petition alleged he was charged with murder and accepted a plea to manslaughter, but that he could not presently be convicted of murder "because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." McMichael requested the appointment of counsel. He also filed an "affidavit of facts in support" of his petition. McMichael averred that at the preliminary hearing the People's witness Tiana Williams testified "she did not see [McMichael] with a firearm" and "she didn't see the shooter." McMichael attested Williams had repeatedly changed her story to police, creating "tremendous doubt to place me as the sole shooter."

The People's opposition argued McMichael was not eligible for resentencing because he was the actual killer. The People submitted the transcripts of McMichael's preliminary hearing and his plea hearing, where McMichael's counsel stipulated to

the factual basis for the plea "based on the police reports and the preliminary hearing transcript."

## C.     *The Preliminary Hearing Evidence*

At the preliminary hearing, Sergeant Todd Behrens of the Los Angeles Police Department (LAPD) testified he responded to reports of a "shooting in progress" around 11:00 p.m. on May 5, 2007, at 109th Street and South Broadway in Los Angeles. When he arrived, he saw McMichael about "a city block" from the Magic Wheels private club. McMichael had "some blood on or about his hands," he wore "glasses that appeared to be bent," and his t-shirt and pants were "torn."

Williams testified at the preliminary hearing. Williams stated she knew McMichael, also known as "Cricket," because at the time McMichael was dating her cousin, Andrea Gaines. Williams was at the Magic Wheels club on the evening of the shooting. She saw McMichael on the back patio at Magic Wheels "later on that night when it became dark." McMichael was engaged in "a confrontation" or an off-and-on "verbal argument" with Jackson, whom Williams knew as "Snag."

"[M]inutes later," Williams was dancing inside the club when she heard "two to three" gunshots coming "from the back patio." The music in the club stopped and everyone in the club was "running, trying to get out." Williams testified she saw Gaines coming into the club "from the outside patio" "moments" after the gunshots. Gaines was "upset" and "emotional." Gaines told Williams "that Cricket had shot Snag and Slim." Gaines also said that a person called "Big Kill was trying to hand her a gun to throw in the trash can and . . . she didn't take the gun." Gaines told Williams that "they" threw the gun in the trash can.

4

Williams did not know "Big Kill" personally but had "seen him before."

Williams entered the patio area and saw "Snag laying on the ground" and Yates, whom she knew as Slim, lying "against the wall" about 15 to 20 feet away. Williams also saw McMichael at the scene, "kick[ing]" Snag "[a]bout two to three times," hard enough that "the body was moving." Williams then saw McMichael "[h]op the gate."

Williams did not see McMichael with a gun on the night of the shooting. On cross-examination, McMichael's counsel impeached Williams with her prior statements to police that "a lot of people had brought guns to th[e] club that night and they all left their guns in the kitchen," including "a person by the name of Mark" with "a big gun." Williams admitted she did see a "gun that was wrapped up . . . in something" at the club on the night of the shooting.

Errol Myers testified at the preliminary hearing he had known McMichael over 10 years and considered him to be a "very good friend[]." Myers was living in Las Vegas when he received a phone call from McMichael the day after the shooting. McMichael told Myers that "he got into it . . . with one guy at the club" named "Big Snag." McMichael identified the club as "a motorcycle club on Broadway" and "108th." McMichael told Snag, "'If you touch me I'm gone [*sic*] kill you,'" but Snag grabbed McMichael "and bent his glasses up." McMichael told Myers "[h]e received [a] gun and aimed for Snag and started firing." Myers recalled McMichael told him he received the gun from "Big Kill." Myers knew "Big Kill" and McMichael were both members of the Raymond Avenue Crips gang.

5

McMichael told Myers that when "he aimed [the gun] at Snag, Slim jumped in front of him" and "the gun went off and shot Slim in the chest." According to Myers, McMichael said Snag "tried to turn around and that's when he caught Snag on the side, shot him up in the side." McMichael stated "he had like three bullets in the gun." McMichael also said after he shot Big Snag, "he stomped him and after that he left."

On cross-examination, Myers testified that about a year after the shooting, "[McMichael] said he wasn't the only one shooting and realized that he didn't shoot Slim because he only had three rounds, [or] something like that in his gun. So he said besides him it was other people shooting." Specifically, McMichael told Myers someone called "Jigger was also shooting" and "Jigger shot Slim" because "they didn't really get along or something like that."

LAPD Detective Michael Owens testified that, according to the coroner's report, Jackson died from multiple gunshot wounds, and Yates died from a gunshot wound to the chest. LAPD Officer Roger Fontes testified that as a gang expert familiar with the Raymond Avenue Crips, he believed McMichael to be a member of the gang, based on "interview with officers who have arrested [McMichael] where he's self-admitted to being a member" and "review of his tattoos on his person showing membership or allegiance to that gang."

McMichael did not introduce any evidence at the preliminary hearing.

D.    *Denial of Section 1172.6 Petition*

At the hearing on McMichael's petition, his counsel submitted on the pleadings. The court denied McMichael's

petition without issuing an order to show cause. The court determined McMichael was ineligible for relief based on the record of conviction. The court reasoned McMichael stipulated to the factual basis for his no-contest plea based on the preliminary hearing transcript, and this factual basis established McMichael was not eligible for resentencing. McMichael timely appealed.[2]

## DISCUSSION

A.      *Governing Law and Standard of Review*

In 2018, through Senate Bill No. 1437, the Legislature amended the law of murder to limit the scope of the felony-murder rule and eliminate the natural and probable consequences theory of murder liability. (See *People v. Arellano* (2024) 16 Cal.5th 457, 468-469 (*Arellano*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708, fn. 1 (*Strong*).) These changes eliminated accomplice liability for murder for defendants "who were neither the actual killers nor intended to kill anyone" and who were not "'a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Strong*, at pp. 707-708.) As relevant here, the bill did not affect murder liability for "actual killers."[3] (*People v. Mares* (2024)

---

[2]      After the Supreme Court issued its decision in *People v. Patton* (2025) 17 Cal.5th 549, we invited the parties to file supplemental briefing addressing its impact, if any, on this appeal.

[3]      Senate Bill No. 1437 also did not impact murder liability for direct aiders and abettors to murder. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 546; *People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.) The People do not argue that the record of conviction establishes as a matter of law that

7

99 Cal.App.5th 1158, 1166 (*Mares*), review granted May 1, 2024, S284232; *People v. Patton* (2023) 89 Cal.App.5th 649, 655.) Senate Bill No. 1437 also created a procedure in section 1172.6 to provide retroactive relief for defendants convicted of murder who could not be convicted under the law as amended.[4] (See *Arellano*, at p. 468; *Strong*, at p. 708.) The Legislature later extended relief to defendants convicted of attempted murder or manslaughter under a now-invalid theory. (See *Arellano*, at p. 468, fn. 3.)

Under section 1172.6, as relevant here, a defendant who pleaded guilty to manslaughter may file a petition for resentencing with the sentencing court "to have the petitioner's . . . manslaughter conviction vacated and to be resentenced on any remaining counts." (§ 1172.6, subd. (a).) A petitioner is entitled to relief if "all of the following conditions apply:" first, "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime;" second, "[t]he petitioner . . . accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder;" and third, "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subds. (a)(1)-(3).)

_____

McMichael was a direct aider and abettor to the murders in this case.

[4]     Section 1172.6 was originally codified as section 1170.95, but it was renumbered effective June 30, 2022. (See *Strong*, *supra*, 13 Cal.5th at p. 708, fn. 2.)

8

A petition for resentencing must include "[a] declaration by the petitioner that the petitioner is eligible for relief" under section 1172.6 based on the foregoing criteria and must indicate whether the petitioner requests appointed counsel. (§ 1172.6, subds. (b)(1)(A), (b)(1)(C).) If the petition meets these requirements, the court must appoint counsel (if requested) and the prosecutor must file a response. (§ 1172.6, subds. (b)(3), (c).)

The court must then assess whether the petitioner has made a prima facie showing he is entitled to relief. (See § 1172.6, subd. (c).) The court may consult the record of conviction to "inform" its prima facie inquiry, but the California Supreme Court has emphasized that "the prima facie inquiry . . . is limited" and "the 'prima facie bar was intentionally and correctly set very low.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972 (*Lewis*).) At the prima facie stage, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . ."'" '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id.* at p. 971.) Further, "[i]n reviewing any part of the record of conviction" at the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.)

If the petition does state a prima facie case for relief, the court must grant an order to show cause and hold an evidentiary

9

hearing to determine whether the petitioner is entitled to relief. (See § 1172.6, subds. (c), (d)(1).) The petitioner and the prosecution may present additional evidence at the hearing, and the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes" of Senate Bill No. 1437. (§ 1172.6, subd. (d)(3).)

We independently review the denial of a section 1172.6 petition at the prima facie stage. (See *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930; *People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

B.     *McMichael Established a Prima Facie Case for Resentencing Relief*

McMichael first argues the trial court erred in relying on the preliminary hearing transcript at the prima facie stage. In *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), the California Supreme Court recently addressed the use of a preliminary hearing transcript at the prima facie stage. Specifically, it addressed the situation where "[t]he People, in contesting a petitioner's prima facie showing and seeking denial of a petition prior to an evidentiary hearing, reference specific facts within a petitioner's record of conviction—often within the preliminary hearing transcript—showing, in their view, why relief is unavailable." (*Id.* at p. 556.) *Patton* held that courts may consider the preliminary hearing transcript at the prima facie stage, even if the petitioner did not stipulate to the transcript as part of his plea. (See *id.* at p. 569, fn. 12.) The Court further concluded that "a petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in

10

response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Id.* at p. 557.) Thus, under *Patton*, the trial court could rely on the preliminary hearing transcript in assessing McMichael's prima facie showing under section 1172.6. (See *id.* at p. 569, fn. 12.)

McMichael further argues the trial court erroneously denied his petition because "nothing in [the] record of conviction dispositively establishes the identity of the actual killer." He contends that "[o]nly one witness at the preliminary hearing, Tiana Williams, was actually present at the club where the shooting occurred, and Williams testified that she heard shots but did not see the shooting," and "[a]ccording to Williams' testimony, Gaines also told her that another man—not [McMichael]—was trying to dispose of the gun used in the shooting." McMichael further argues Myers "also testified that [McMichael] told him that someone else had provided the gun" and McMichael "subsequently told Myers that there was more than one shooter and that someone else [Jigger] had shot one of the victims."

The People contend the preliminary hearing transcript conclusively establishes McMichael was the sole shooter and actual killer. According to the People, "the post-shooting disposal of the firearm does not constitute evidence that someone other than [McMichael] killed either victim. Similarly, appellant's claim about Jigger could not have supported a theory that appellant was responsible for [the] murder of either victim under the natural and probable consequences doctrine, or under any other now-invalid theory."

11

We conclude the record of conviction does not conclusively establish as a matter of law McMichael was the sole shooter of both victims. The presence of other potential shooters and lack of firsthand evidence McMichael was the actual and sole shooter distinguishes this case from those where the record of conviction conclusively established ineligibility for resentencing relief under section 1172.6.

In *Patton*, for instance, the record of conviction conclusively established the petitioner was "the sole and direct perpetrator of the shooting." (*Patton*, *supra*, 17 Cal.5th at p. 563.) At the preliminary hearing, police officers familiar with Patton and his clothing identified him as the shooter from surveillance footage showing "a shooter firing his gun at a victim." (*Id.* at p. 557.) This uncontested evidence, along with Patton's plea to a sentencing enhancement for intentional discharge of a firearm (§ 12022.53, subd. (c)), established Patton was the actual killer. (See *Patton,* at p. 563.)

Several other cases confirm that when there is no evidence of an accomplice or alternate perpetrator at the prima facie stage, the superior court may determine the petitioner is the actual killer and ineligible for relief as a matter of law. (See, e.g., *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [petitioner was actual killer as "the only participant in the killing"]; *Mares, supra,* 99 Cal.App.5th at p. 1175 [petitioner was actual killer where the record contained "no indication of the involvement of any other person in the killing or in the physical fight" and petitioner did not explain "how he could have been convicted as an accomplice"]; *People v. Muhammad* (2024) 107 Cal.App.5th 268, 279, review granted (Feb. 19, 2025, S288860) [actual killer where in the "record of conviction, there is no suggestion of an

accomplice or confederate as would be necessary for a natural and probable consequences theory"]; *People v. Pickett* (2023) 93 Cal.App.5th 982, 989-990, review granted (Oct. 11, 2023, S281643) [same, where eyewitnesses testified they saw petitioner confront victim, "pull out a gun and fire a shot into the air" and "there is nothing to suggest that any other person was involved in the incident"].)

By contrast, where there is evidence of an accomplice who might have been the direct perpetrator an evidentiary hearing is typically necessary for the superior court to weigh the evidence and determine whether the petitioner was the actual killer. (See *Patton, supra*, 17 Cal.5th at p. 560, fn. 4 [""'if the record contains any indication [the petitioner] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition'"]; *Mares, supra*, 99 Cal.App.5th at p. 1173.) Evidence of possible accomplices is pivotal because, "for the Senate Bill 1437 changes to accomplice liability to have made a difference" to the petitioner's conviction, the petitioner must assert "a theory that he was guilty of assisting some other . . . person with some other . . . crime that resulted in that person killing the victim. If [the petitioner] could assert *that*, it would be a reason he could not be convicted of murder today that was unavailable when he pled guilty." (*Mares,* at p. 1168.)

*Patton* also observed that, "A dispute regarding the basis of a conviction might arise if . . . a petitioner points to specific facts [in the record of conviction] that identify someone else as the direct perpetrator." (*Patton, supra*, 17 Cal.5th at p. 567.) These facts must be more than "mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be

13

conjured from thin air or a legal conclusion." (*Ibid.*) For example, in *People v. Estrada* (2024) 101 Cal.App.5th 328 (*Estrada*), the petitioner established a prima facie case for relief where the preliminary hearing included "testimony that could potentially suggest multiple perpetrators were involved, potentially undermining the Attorney General's argument that [defendant] was the actual killer . . . . Beyond [defendant], there were two people with blood on their clothes, and one of the individuals carried a box cutter." (*Id.* at p. 340.) And in *People v. Lopez* (2022) 78 Cal.App.5th 1 (*Lopez*), although the petitioner was tried on the theory he was the actual killer, he established a prima facie case under section 1172.6 where the record suggested "there were no eyewitnesses to the murder" or "any direct evidence of who bludgeoned the victim." (*Id.* at p. 19.)

Here, there is evidence from the preliminary hearing tending to show McMichael was the sole shooter and actual killer, including Myers's account of McMichael's confession and Gaines's statement to Williams that McMichael "had shot Snag and Slim." But the evidence from the preliminary hearing also suggests non-hypothetical alternate direct perpetrators, including Big Kill and Jigger. The testimony at that hearing suggests Big Kill, McMichael's fellow gang member, possessed the murder weapon before and after the shooting. (See *Estrada, supra,* 101 Cal.App.5th at p. 340 [presence of other armed individuals at scene warranted evidentiary hearing].) The evidence also suggests Jigger (of unknown relationship to McMichael) could have shot Yates. Further, the preliminary hearing did not include any testimony from eyewitnesses to the shooting or other firsthand evidence of the shooter's identity. (Compare *Lopez, supra,* 78 Cal.App.5th at pp. 19-20 [lack of

14

eyewitness testimony of killing required evidentiary hearing], with *Patton, supra,* 17 Cal.5th at p. 557 [surveillance video of shooting].) McMichael asserted as much in the affidavit accompanying his petition, which distinguishes this case from *Patton* where the petitioner did not raise any issues with the preliminary hearing evidence in the trial court. (See *Patton,* at p. 560.)

Under these circumstances, we conclude McMichael was entitled to an evidentiary hearing so the court could weigh the evidence and determine his eligibility for section 1172.6 resentencing relief.[5]

## DISPOSITION

The order denying the petition is reversed, and the matter is remanded with directions to issue an order to show cause and hold an evidentiary hearing. (See § 1172.6, subds. (c), (d)(1).)


MARTINEZ, P. J.

We concur:


SEGAL, J.                    PULOS, J. [*]

---

[5]    In light of our reversal and remand, we do not address McMichael's argument the superior court's denial of his petition violated due process.

[*]    Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15